ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| **CHARLOTTE SANTIAGO OLIVIERI**<br><br>Apelante<br><br>v.<br><br>**AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN; ADMINISTRACIÓN DE LOS SISTEMAS DE RETIRO; MUNICIPIO DE SAN JUAN**<br><br>Apelados | KLAN202400918 | **APELACION** procedente del Tribunal de Primera Instancia, Sala Superior de **San Juan**<br><br>Civil Núm.: **SJ2021CV06724**<br><br>Sobre: Sentencia Declaratoria |

Panel integrado por su presidenta, la Jueza Ortiz Flores, la Jueza Aldebol Mora y la Jueza Boria Vizcarrondo.

Boria Vizcarrondo, Jueza Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 22 de noviembre de 2024.

Comparece ante nos, mediante *Apelación*, la señora Charlotte Santiago Olivieri (Sra. Santiago Olivieri o Apelante) y nos solicita que revoquemos la *Sentencia Nunc Pro Tunc* emitida el 6 de junio de 2024 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI).[1] Mediante la *Sentencia Nunc Pro Tunc,* el TPI desestimó la *Segunda Demanda Enmendada* presentada por la Sra. Santiago Olivieri[2] y declaró Ha Lugar las mociones de sentencia sumaria presentadas por la Autoridad de Carreteras y Transportación (ACT),[3] el Municipio de San Juan[4] y la Junta de Retiro del Gobierno de Puerto Rico (Junta de Retiro).[5]

---

[1] Apéndice de *Apelación*, Anejo XII, págs. 488-509. Notificada y archivada en autos el 7 de junio de 2024. (La *Sentencia* fue emitida originalmente el 4 de junio de 2024 pero enmendada subsiguientemente el 6 de junio de 2024, denominada la *Sentencia Nunc Pro Tunc*. Aunque la misma está titulada "Nunc Pro Tunc", tiene efectos sustanciales sobre los derechos de las partes al resolver, explícitamente, la *Moción de Sentencia Sumaria* presentada por la Autoridad de Carreteras y Transportación, lo que la *Sentencia* original no hizo).
[2] *Íd.,* Anejo IV, págs. 43-70.
[3] *Íd.,* Anejo VII, págs. 186-323.
[4] *Íd.,* Anejo VIII, págs. 324-404.
[5] *Íd.,* Anejo VI, págs. 81-185.

Por los fundamentos que discutimos a continuación, confirmamos la *Sentencia Nunc Pro Tunc*.

**I.**

El 1 de julio de 1997, la Sra. Santiago Olivieri fue nombrada empleada transitoria bajo el puesto de Secretaria Administrativa del Departamento de Desarrollo Económico y Turismo del Municipio de San Juan. Ese mismo día, la Apelante firmó una *Declaración Individual* para acogerse al Plan de Completa Suplementación al amparo de la Ley del Plan de Completa Suplementación para Pensiones del Gobierno de 1968, Ley Núm. 93 de 19 de julio de 1968, 3 LPRA sec. 829 *et seq.* (Ley Núm. 93).[6] En la *Declaración Individual*, la Sra. Santiago Olivieri reconoció que al acogerse al Plan de Completa Suplementación, aportaría al Sistema de Retiro de los Empleados del Gobierno de Puerto Rico (Sistema de Retiro) el 8.275% de su sueldo total durante su tiempo como participante del Plan, que aquella decisión era irrevocable según dispone el Artículo 3 de la Ley Núm. 93 y que la pensión que recibiría del Sistema no se reduciría en ningún momento.[7]

Luego de culminar su nombramiento transitorio como Secretaria Administrativa en el Municipio de San Juan, el 1 de octubre de 1998, la Sra. Santiago Olivieri obtuvo un nuevo nombramiento transitorio, esta vez bajo el puesto de Secretaria Ejecutiva en el Municipio de San Juan. Posteriormente, la Asamblea Municipal del Municipio de San Juan aprobó el Plan de Clasificación y Retribución, efectivo a partir del 1 de marzo de 1999, en el que la Sra. Santiago Olivieri fue reclasificada en su puesto y hubo aumento en su salario. Mediante una carta enviada el 30 de junio de 1999 por la Directora de Recursos Humanos del Municipio, la señora Yolanda Cordero, la Sra. Santiago Olivieri fue notificada sobre el

---

[6] *Íd.*, Anejo IV, pág. 61.
[7] *Íd.*

cambio en su puesto.[8] En consecuencia, se le asignó el nuevo título de Administradora de Sistemas de Oficina y un aumento de sueldo de $150.00, con un nuevo sueldo de $1,669.00.[9] Además, según el *Informe de Cambio Especial 99-02875*, la Sra. Santiago Olivieri fue informada que su puesto estaba clasificado bajo el servicio de carrera del Municipio de San Juan.[10] Así también lo dispone la *Hoja de Servicio* emitida el 12 de junio de 2002, que refleja que entre el 1 de julio de 1999 y el 15 de enero de 2001, la Sra. Santiago Olivieri fue empleada regular de carrera.[11]

Posteriormente, el Municipio de San Juan abrió una convocatoria para el puesto de Administrador(a) de Sistemas de Oficina.[12] El 23 de septiembre de 1999, la Oficina de Personal y Relaciones Obrero-Patronal del Municipio de San Juan emitió una *Requisición de Empleo* en la que detalló que el nombramiento por el cual abrieron la convocatoria sería uno probatorio. Así las cosas, el 30 de septiembre de 1999, la Sra. Santiago Olivieri presentó una *Solicitud de Empleo* para aquél puesto y, luego de un proceso de reclutamiento y selección, fue seleccionada para el puesto.[13]

En el *Informe de Cambio* emitido el 28 de diciembre de 1999 por la Oficina de Recursos Humanos del Municipio de San Juan, surge que efectivo el 1 de enero de 2000, la Sra. Santiago Olivieri pasaría de tener un puesto transitorio a uno probatorio hasta el 30 de septiembre del 2000 e ingresaría al Sistema de Retiro al 8.775%.[14] Luego del periodo probatorio, el 1 de septiembre de 2000, el puesto de la Sra. Santiago Olivieri cambió a ser uno "regular de carrera".[15] Luego de un poco más de un año en aquel puesto, el 16

---

[8] *Íd.*, pág. 59.
[9] *Íd.*, pág. 61.
[10] *Íd.*
[11] *Íd.*, pág. 63.
[12] *Íd.*, pág. 119.
[13] *Íd.*, págs. 120-121.
[14] *Íd.*, pág. 135.
[15] *Íd.*, pág. 136.

de enero de 2001, la Sra. Santiago Olivieri fue nombrada Secretaria Confidencial I en la ACT, como empleada de confianza y obtuvo un aumento de sueldo.[16]

En resumen, la Sra. Santiago Olivieri fue empleada, en distintos puestos, del Municipio de San Juan entre el 1 de julio de 1997 hasta el 15 de enero de 2001. Según la *Certificación* emitida por la Administración de Recursos Humanos y Relaciones Laborales del Municipio de San Juan, así como la *Certificación* emitida por la Oficina de Finanzas Municipales de San Juan, se le emitió el primer descuento por concepto de Aportación Individual al Sistema de Retiro el 16 de febrero de 2000.[17] Del 16 de enero de 2001 hasta el 13 de junio de 2004, fue empleada de confianza en la ACT. Del 14 de junio de 2004 hasta el 30 de septiembre de 2011, fue empleada de carrera regular en la ACT.[18] Según surge de la prueba, para el 23 de marzo de 2022, la Sra. Santiago Olivieri continuaba siendo empleada gerencial de carrera en la ACT.[19]

Así las cosas, el 12 de septiembre de 2022, la Sra. Santiago Olivieri presentó una *Segunda Demanda Enmendada* en solicitud de una sentencia declaratoria al amparo de la Regla 59 de Procedimiento Civil, 32 LPRA Ap. V, R. 59, en contra de la Junta de Retiro, la ACT y el Municipio de San Juan (conjuntamente Demandados o Apelados).[20] Mediante la misma, la Apelante solicitó una sentencia declaratoria sobre si, al ser empleada de la ACT por más de veinte (20) años, podía beneficiarse del sistema de retiro definido por la Ley Núm. 1 de 16 de febrero de 1990 (Ley Núm. 1) que enmendó la Ley Núm. 93; o si está acogida a la Ley Núm. 305-1999, que enmendó la Ley Núm. 447 de 15 de mayo de 1951 al crear un Programa de Cuenta de Ahorro para el Retiro para personas que

---

[16] *Íd.*, Anejo VII, pág. 284.
[17] *Íd.*, Anejo VIII, pág. 366.
[18] *Íd.*, Anejo IX, pág. 468.
[19] *Íd.*, Anejo I, pág. 2.
[20] *Íd.*, Anejo IV, págs. 43-70.

ingresaron al Gobierno luego del 1 de enero de 2000 (Reforma 2000).[21]

La Sra. Santiago Olivieri sostuvo que al haber ingresado al Sistema mediante su *Declaración Individual* el 1 de julio de 1997, debe poder beneficiarse del Sistema de Retiro creado por la Ley Núm. 1.[22] Además, alegó que comenzó a hacer las aportaciones mensuales a su cuenta de retiro a partir del 1 de julio de 1999, cuando alegadamente fue reclasificada como empleada de carrera.[23] Lo mismo surge de dos documentos anejados a la *Segunda Demanda Enmendada*: (1) la *Hoja de Servicio* emitida el 12 de julio de 2002 por la Administración de los Sistemas de Retiro del Gobierno de Puerto Rico, en la que la señora María Sánchez Jiménez, Supervisora de la Sección de Servicios Sobre Retiro, certificó las aportaciones al Sistema de Retiro bajo el Plan de Completa Suplementación;[24] y, (2) el *Informe de Cambio Especial 99-02875* emitido el 24 de junio de 1999 y firmado por la señora Yolanda Cordero, Directora de Recursos Humanos del Municipio de San Juan, en la que aparece que la Sra. Santiago Olivieri era empleada de carrera del Municipio.[25]

Por su parte, los Demandados sostuvieron que contrario a lo que alegó la Sra. Santiago Olivieri, para el 31 de diciembre de 1999, ella fue empleada transitoria, por lo que le era de aplicación el plan de retiro de la Reforma 2000. Además, señalaron que cuando la Sra. Santiago Olivieri firmó la *Declaración Individual* en el 1997, ella era empleada transitoria, por lo que no aportaba al Sistema de Retiro y no cumplía con los requisitos para acogerse al Sistema de la Ley Núm. 1. Para demostrar esto, el 1 y 9 de septiembre de 2022, la Oficina de Administración de Recursos Humanos y Relaciones

---

[21] *Íd.*
[22] *Íd.*, págs. 54-55.
[23] *Íd.*, pág. 47.
[24] *Íd.*, pág. 63.
[25] *Íd.*, pág. 61.

Laborales del Municipio de San Juan emitió unas certificaciones en la que constaba que el *Informe de Cambio Especial 99-02875* no produjo cambio en la categoría ni estatus de la Sra. Santiago Olivieri; el cambio fue únicamente en su título y sueldo, por lo que continuó siendo empleada transitoria.[26]

Luego de varios trámites procesales, el 2 de febrero de 2024, la Junta de Retiro presentó una *Moción en Solicitud de Sentencia Sumaria.*[27] Sostuvo que cuando la Sra. Santiago Olivieri fue reclasificada como empleada de carrera en el 1999, dicha reclasificación se hizo contrario a la ley vigente. Conforme la Ley de Municipios Autónomos, Ley Núm. 81 de 30 de agosto de 1991, 21 LPRA sec. 4001 *et seq.* (Ley de Municipios Autónomos) y el Reglamento De Personal Del Servicio De Carrera Del Poder Ejecutivo Del Municipio de San Juan (Reglamento):[28]

> [L]os empleados municipales con nombramientos transitorios no se considerarán empleados de carrera ni se podrán nombrar en puestos de carrera con estatus probatorio o regular, a menos que pase por los procedimientos de reclutamiento y selección. No existe evidencia de que la demandante –**quien tenía un nombramiento transitorio en ese momento**– haya pasado por un proceso de reclutamiento y selección previo al 1 de marzo de 1999.[29]

Alegó que, aunque la Sra. Santiago Olivieri "ocupaba un puesto bajo la categoría de carrera al 1 de marzo de 1999, [...] **su nombramiento continuaba siendo transitorio**".[30] Finalmente, dispuso que **la Junta de Retiro únicamente considera los "Informes de Cambio" como los documentos oficiales para realizar cualquier cambio relacionado con la estructura de retiro a la cual pertenece un participante**. Esto puesto que "son

---

[26] *Íd.*, Anejo VI, págs. 117-118.
[27] *Íd.*, Anejo VI, págs. 81-185.
[28] *Íd.*, págs. 161-185.
[29] *Íd.*, págs. 103-104. (Énfasis en la original).
[30] *Íd.* (Énfasis en la original).

preparados por los funcionarios correspondientes, además de que se realizan de manera contemporánea al cambio realizado".[31]

El 5 de febrero de 2024, la ACT también presentó una *Moción de Sentencia Sumaria* en la que alegó que la controversia presentada únicamente requiere la participación de la Junta de Retiro y el Municipio de San Juan.[32] Sostuvo que no existe duda en cuanto a estatus de la Sra. Santiago Olivieri como empleada de carrera a partir de que comenzó a trabajar con la ACT en el 2001.

El Municipio de San Juan, por su parte, presentó una *Moción en Solicitud de Sentencia Sumaria a Favor del Municipio de San Juan* el 7 de febrero de 2024.[33] Dicha *Moción* comparte gran parte de los fundamentos presentados en las mociones de sentencia sumaria, pero aclaró algunos asuntos. En primer lugar, alegó que los **empleados transitorios no son participantes del Sistema de Retiro**, por lo que la Sra. Santiago Olivieri no pudo haber aportado al mismo antes del 2000, cuando fue reclasificada como empleada de carrera. También alegó que **las *Hojas de Servicio* no constituyen los documentos oficiales que se consideran para establecer la estructura de plan de retiro a la que pertenece un participante**, puesto que estos constituyen un resumen de los *Informes de Cambio*.[34]

Luego de la comparecencia de la Sra. Santiago Olivieri a las mociones de los Demandados, el 7 de junio de 2024, el TPI notificó la *Sentencia Nunc Pro Tunc* de la cual se recurre.[35] Tras hacer unas determinaciones de hechos a base de la prueba documental presentada, incluyendo informes de las entidades pertinentes, así como deposiciones presentadas, el TPI declaró Ha Lugar las mociones de sentencia sumaria. En primer lugar, determinó que:

---

[31] *Íd*., pág. 106. (Énfasis suprimido).
[32] *Íd*., Anejo VII, págs. 186-323.
[33] *Íd*., Anejo VIII, págs. 324-404.
[34] *Íd*., pág. 331.
[35] *Íd*., Anejo XII, págs. 488-509.

> A pesar de que Charlotte Santiago alegó y adjuntó la *Declaración Individual* que firmó el 1 de julio de 1997 para ser parte del Sistema de Retiro establecido en la Ley Núm. 1, lo cierto es que **la Ley Núm. [447]-1951 es clara en cuanto a que los empleados municipales transitorios no serían participantes del Sistema de Retiro**.[36]

También determinó que no existe conflicto entre el *Informe de Cambio Especial 99-02875* y la *Certificación* que emitió el Municipio de San Juan el 9 de septiembre de 2022, puesto que el Reglamento vigente establecía que el servicio de carrera comprendía el estatus transitorio. Por lo tanto, la Sra. Santiago Olivieri podía ser empleada de carrera-transitoria. Aunque ocupaba un puesto en el servicio de carrera, la Ley de Municipios Autónomos impedía que ella fuese designada como tal puesto que no había cumplido con el requisito de reclutamiento y selección.[37] Finalmente, sostuvo que la Sra. Santiago Olivieri admitió, en una deposición, que la primera retención de su sueldo para el Sistema de Retiro fue en febrero de 2000. Por lo tanto, concluyó que le aplicaba el plan de retiro bajo la Reforma 2000.

En desacuerdo con la determinación del TPI, el 24 de junio de 2024, la Sra. Santiago Olivieri presentó una *Solicitud de Reconsideración de la Sentencia Sumaria (Sentencia Nunc Pro Tunc).*[38] Mediante dicha comparecencia, alegó que el TPI resolvió mediante la vía sumaria aunque según su entender, existían controversias sobre hechos materiales.[39] No obstante, tras considerar las posturas de los Demandados, el 15 de agosto de 2024, el TPI declaró No ha Lugar la *Solicitud de Reconsideración.*[40]

Inconforme, el 15 de octubre de 2024, presentó la *Apelación* ante nuestra consideración. En dicha comparecencia, presentó los siguientes señalamientos de error:

---

[36] *Íd.*, pág. 507. (Énfasis nuestro).
[37] *Íd.*, pág. 508.
[38] *Íd.*, Anejo XIII, págs. 510-521.
[39] *Íd.*, pág. 510.
[40] *Íd.*, Anejo XVIII, pág. 546.

1. **ERRÓ EL TPI AL DICTAR SENTENCIA SUMARIA DE DESESTIMACIÓN DE LA DEMANDA YA QUE LA PRUEBA EN LOS AUTOS DEMUESTRA DE MANERA INDUBITADA QUE EXISTE CONTROVERSIA GENUINA Y FUNDAMENTADA SOBRE HECHOS MATERIALES Y PERTINENTES A LAS CAUSAS DE ACCIÓN INCOADAS POR LA APELANTE.**

2. **ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL BASAR LA DESESTIMACIÓN SUMARIA DE LA DEMANDA EN LA ALTERACIÓN UNILATERAL DE LA CATEGORÍA DEL PUESTO OCUPADO POR LA DEMANDANTE A TRANSITORIA A PESAR DE QUE ESA ACTUACIÓN DE MUNICIPIO ES NULA POR HABERSE EFECTUADO EN CONTRAVENCIÓN AL DEBIDO PROCESO DE LEY, ESTAR CONTRADICHA POR LAS DETERMINACIONES ANTERIORES DEL MISMO MUNICIPIO QUE ESTABLECEN QUE LA DEMANDANTE ADQUIRIÓ LA CATEGORÍA DE CARRERA ANTES DE ENTRAR EN VIGOR LA LEY SOBRE RETIRO DE REFORMA 2000 Y SER CONTRARIA A LA PRESUNCIÓN DE CORRECCIÓN DE LAS ACTUACIONES ADMINISTRATIVAS.**

## II.

### A.

La sentencia sumaria es un mecanismo procesal que provee nuestro ordenamiento para propiciar la solución justa, rápida y económica de controversias en las cuales resulta innecesario celebrar un juicio plenario. *Meléndez González et al. v. M. Cuebas, Inc.*, 193 DPR 100, 115 (2015); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414 (2013); *Const. José Carro v. Mun. Dorado*, 186 DPR 113 (2012); *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288 (2012). La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, permite dictar sentencia sumaria sobre la totalidad o sobre parte de una reclamación. Su función esencial es permitir en aquellos litigios de naturaleza civil que una parte pueda mostrar previo al juicio que, tras las partes contar con la evidencia que ha sido debidamente descubierta, no existe una controversia material de hecho que deba ser dirimida en un juicio plenario y que, por tanto, el tribunal está en posición de aquilatar esa evidencia para disponer del caso ante sí. *Rodríguez Méndez, et als v. Laser Eye*, 195 DPR 769 (2016); *Lugo*

*Montalvo v. Sol Meliá Vacation*, 194 DPR 209 (2015); *Const. José Carro v. Mun. Dorado, supra*, pág. 128.

La Regla 36 de Procedimiento Civil dispone que la solicitud de sentencia sumaria puede ser presentada por cualquiera de las partes que solicite un remedio por medio de una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. Se dictará sentencia sumaria si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, junto a cualquier declaración jurada que se presente, si alguna, demuestran que no hay controversia real y sustancial sobre algún hecho esencial y pertinente y que, como cuestión de Derecho, procede hacerlo. Regla 36.3 (e) de Procedimiento Civil, *supra*; *SLG Zapata-Rivera v. J.F. Montalvo, supra*. Es decir, únicamente procede en aquellos casos en los que no existen controversias reales y sustanciales en cuanto los hechos materiales, por lo que lo único que queda, por parte del poder judicial, es aplicar el Derecho. *Oriental Bank v. Perapi S.E*, 192 DPR 7 (2014); *SLG Zapata-Rivera v. J.F. Montalvo, supra*; *Nieves Díaz v. González Massas*, 178 DPR 820 (2010).

Sobre el particular, hay que señalar que un hecho material es aquel que puede afectar el resultado de la reclamación al amparo del Derecho sustantivo aplicable. *Ramos Pérez v. Univisión*, 178 DPR 200 (2010) (citando a J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, San Juan, Pubs. J.T.S., 2000, T. I, pág. 609); *Abrams Rivera v. E.L.A.*, 178 DPR 914 (2010). La calidad del "hecho material" debe ser suficiente como para que sea necesario que un juez o jueza la dirima a través de un juicio plenario. *Ramos Pérez v. Univisión, supra*. Es decir, luego de aquilatar prueba testifical y de dirimir cuestiones de credibilidad.

Para demostrar de manera efectiva la inexistencia de controversia de hechos, la parte promovente está obligada a exponer las alegaciones de las partes, desglosar los hechos sobre los cuales aduce no hay controversia en párrafos debidamente numerados y para cada uno de ellos deberá especificar la página o párrafo de la declaración jurada u otra prueba admisible en evidencia que los apoye y las razones por las cuales debe ser dictada la sentencia argumentando el derecho aplicable. Regla 36.3 (a) (1)-(4) de Procedimiento Civil, *supra*; *SLG Zapata-Rivera v. J. F. Montalvo*, *supra*, pág. 432.

La parte que se oponga a que se dicte sentencia sumaria, según la citada Regla 36.3 de Procedimiento Civil, *supra*, deberá controvertir la prueba presentada por la parte que la solicita. Para ello, deberá cumplir con los mismos requisitos con los que tiene que cumplir el proponente, pero, además, su solicitud deberá contener:

> [U]na relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal.

*Íd.*, Regla 36.3 (b) (2).

De no hacerlo, correrá el riesgo de que la solicitud de sentencia sumaria sea acogida por el tribunal y se resuelva en su contra. *Ramos Pérez v. Univisión*, *supra*, pág. 215; *Luan Invest. Corp. v. Rexach Const. Co.*, 152 DPR 652 (2000).

La parte promovente puede prevalecer por la vía sumaria, si presenta prueba incontrovertida sobre todos los elementos indispensables de su causa de acción. La promovida puede derrotar la moción de sentencia sumaria de tres maneras: (1) si establece una controversia real de hechos sobre uno de los elementos de la causa de acción de la parte demandante, (2) si presenta prueba que apoye

una defensa afirmativa, (3) si presenta prueba que establezca una controversia sobre la credibilidad de los testimonios jurados que presentó la demandante. *Ramos Pérez v. Univisión, supra,* pág. 217.

Es norma firmemente establecida que toda duda sobre la existencia de una controversia de hechos bona fide debe ser resuelta contra la parte que solicita la sentencia sumaria. *SLG Zapata-Rivera v. J.F. Montalvo, supra*; *Córdova Dexter v. Sucesión Ferraiuoli,* 182 DPR 541 (2011). Por lo tanto, al determinar si existen controversias de hechos que impiden dictar sentencia sumaria, el juzgador debe analizar los documentos que acompañan la solicitud de sentencia sumaria y los documentos incluidos con la oposición, así como los que obren en el expediente. Dicho examen debe ser guiado por el principio de liberalidad a favor de la parte que se opone a que se dicte sentencia sumaria. *Ramos Pérez v. Univisión, supra.* De existir dudas sobre la existencia de una controversia de hechos, estas deben resolverse en contra del promovente, ya que este mecanismo procesal no permite que el tribunal dirima cuestiones de credibilidad. *Mgmt. Adm. Servs. Corp. v. E.L.A.,* 152 DPR 599, 610 (2000); *Cuadrado Lugo v. Santiago Rodríguez,* 126 DPR 272, 279-280 (1990); *Corp. Presiding Bishop v. Purcell,* 117 DPR 714, 720 (1986).

Nuestro Tribunal Supremo ha establecido que, aunque en el pasado se ha referido a la sentencia sumaria como un mecanismo procesal "extraordinario", ello no significa que su uso esté excluido en algún tipo de pleito. En ese sentido, no queda impedida la utilización del mecanismo de sentencia sumaria en reclamaciones que requieren la consideración de elementos subjetivos o de intención, cuando de los documentos a ser evaluados en la solicitud de sentencia sumaria surge que no existe controversia en cuanto a hechos materiales. *Ramos Pérez v. Univisión, supra,* pág. 219.

Ahora bien, nuestro ordenamiento jurídico establece que la sentencia sumaria sólo deberá dictarse en casos claros, cuando el tribunal tenga ante sí la verdad sobre todos los hechos pertinentes. *Rosario v. Nationwide Mutual*, 158 DPR 775, 780 (2003). Ciertamente, la concesión de la sentencia sumaria está sujeta a discreción del tribunal; no obstante, el sabio discernimiento es el principio rector para su uso porque, mal utilizada, puede prestarse para despojar a un litigante de su "día en corte", principio elemental del debido procedimiento de ley. Una parte tiene derecho a un juicio plenario cuando existe una controversia real y sustancial sobre hechos relevantes y pertinentes. Esa controversia debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario. *Mejías Montalvo v. Carrasquillo Martínez,* 185 DPR 288, 300 (2012); *Nieves Díaz v. González Massas, supra,* pág. 849; *MGMT. Adm. Servs. Corp. v. E.L.A.,* 152 DPR 599, 611 (2000).

Recordemos que el mecanismo de sentencia sumaria no es idóneo para todo caso civil ante la consideración de los tribunales. No debe ser utilizado en casos complejos, casos de alto interés público o casos donde hay elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad sea esencial. *García López v. Méndez García,* 88 DPR 363 (1963); *Soto v. Hotel Caribe Hilton,* 137 DPR 294 (1994); *Elías y otros v. Chenet y otros,* 147 DPR 507(1999). También existen litigios donde, por su naturaleza, no es "deseable o aconsejable el resolverlos mediante una sentencia sumariamente dictada, porque difícilmente en tales casos el Tribunal puede reunir ante sí toda la verdad de los hechos a través de 'affidavits' o deposiciones". *García López v Méndez García, supra,* pág. 380.

**B.**

Nuestro Tribunal Supremo ha dispuesto que el Tribunal de Apelaciones se encuentra en la misma posición que el Tribunal de Primera Instancia para evaluar la procedencia o no de conceder una solicitud de sentencia sumaria. *Meléndez González et al. v M. Cuebas, supra*. A tal efecto, nuestra revisión es una *de novo*, y el análisis a realizar debe regirse por las disposiciones de la Regla 36.4 de Procedimiento Civil, *supra,* y su jurisprudencia interpretativa. Por lo tanto, los requisitos del estándar de revisión del Tribunal de Apelaciones son:

> (1) Los foros apelativos se encuentran en la misma posición del TPI al momento de revisar solicitudes de sentencia sumaria, pero están limitados en lo siguiente:
>     (a) no pueden tomar en consideración evidencia que las partes no presentaron en el TPI; y
>     (b) no pueden adjudicar los hechos materiales en controversia, ya que ello le compete al foro primario luego de celebrado un juicio en su fondo.
> (2) La revisión de los foros apelativos es una *de novo* y se debe examinar el expediente de la manera más favorable a favor de la parte que se opone a la moción de sentencia sumaria, llevando a cabo todas las inferencias permisibles a su favor.
> (3) Los foros apelativos deben revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de la Regla 36 de Procedimiento Civil, *supra.*
> (4) Los foros apelativos deben revisar si en realidad existen hechos materiales en controversia. De haberlos, tienen que exponer concretamente qué hechos materiales encontró que están y cuales están incontrovertidos.
> (5) De encontrar que los hechos realmente están incontrovertidos, los foros apelativos procederán a revisar *de novo* si el TPI aplicó correctamente el Derecho a la controversia.
>
> Véanse *Meléndez González v. M. Cuebas*, supra; *Vera v. Dr. Bravo*, 161 DPR 308 (2004); C. Zeno Santiago, *op. cit.,* pág. 193.

Así, de entender que procede revocar una sentencia sumaria debemos indicar cuales hechos esenciales y pertinentes están en controversia e igualmente decir cuales están incontrovertidos. Si, por el contrario, encontramos que los hechos materiales (esenciales y pertinentes) realmente están incontrovertidos, nuestra revisión se

limitará a revisar *de novo* si procedía en derecho su concesión. Es decir, si el Tribunal de Primera Instancia aplicó correctamente el Derecho o no.

## C.

La Ley de Personal del Servicio Público de Puerto Rico, Ley Núm. 5 de 14 de octubre de 1974, 3 LPRA sec. 1301 *et seq.* (Ley de Personal), vigente durante el tiempo que la Sra. Santiago Olivieri fue empleada del Municipio de San Juan, estableció un sistema de administración de personal uniforme para el Gobierno de Puerto Rico, incluyendo a los gobiernos municipales. *Íd.*, Sección 2.1(2). La Sección 5.9 de la Ley de Personal dispone que "[h]abrá dos servicios: de carrera y de confianza". En cuanto a los empleados de confianza, la Sección 5.10 dispone que "[l]os empleados de confianza serán de libre selección y remoción. Serán igualmente de confianza aquellos que aunque siendo de libre selección sólo pueden ser removidos por justa causa por disposición de ley o aquéllos cuyo nombramiento sea por un término prefijado por ley". *Íd.*, Sección 5.10.

Por otro lado, la Ley de Personal dispone que los empleados de carrera serán "aquellos que han ingresado al sistema después de pasar por el procedimiento establecido en la Sección 4.3, o después de reunir las condiciones establecidas en la Sección 5.11 inciso (7) de esta ley". *Íd.*, Sección 5.12. Entiéndase entonces que la Ley de Personal limita la clasificación de empleados de carrera a aquellos casos en los que el empleado: (1) haya pasado por un proceso de reclutamiento y selección para un puesto de carrera, *Íd.*, Sección 4.3; o, (2) el empleado de confianza haya sido autorizado para ocupar un puesto de carrera porque ocurrió un cambio de funciones o en la estructura organizativa de la entidad gubernamental que lo justifique, *Íd.*, Sección 5.11(7). La Sección 5.11(7) añade que dado un cambio de funciones o de la estructura organizativa que

justifique la reclasificación de un empleado de confianza, dicha reclasificación estará sujeta a los siguientes criterios:

> (a) Que reúna los requisitos establecidos para la clase de puesto;
> (b) que haya ocupado el puesto por un período de tiempo no menor que el correspondiente al período probatorio para la clase de puesto;
> (c) que apruebe o haya aprobado el examen establecido para la clase de puesto, y
> (d) que la autoridad nominadora certifique que sus servicios han sido satisfactorios.

*Íd.*

Ahora bien, la Asamblea Legislativa ha entendido necesario otorgarle a los municipios de Puerto Rico un mayor grado de autonomía fiscal en el manejo de sus recursos, su personal y prestación de servicios. Visto que por décadas el Gobierno Central administraba la prestación de servicios básicos y esenciales de manera ineficiente, la Asamblea Legislativa aprobó la Ley de Municipios Autónomos para que dicha encomienda fuese delgada en mayor parte a los municipios. Ley de Municipios Autónomos, *supra*, Exposición de Motivos.

Al igual que la Ley de Personal, la Sección 11.001 de la Ley de Municipios Autónomos dispone para la creación de un sistema de administración de personal municipal, de tal manera que cada municipio estará facultado para implementar su propio sistema, siguiendo lo dispuesto en la referida Ley. Por lo tanto:

> Los municipios adoptarán un reglamento uniforme de Administración de Personal que contengan un Plan de Clasificación de Puestos y de Retribución Uniforme debidamente actualizado para los servicios de carrera y de confianza; un sistema de reclutamiento, selección y reglamentación sobre adiestramiento, evaluación de empleados y funcionarios y sobre el área de retención y cesantías.

*Íd.*, Sección 11.001.

La Sección 11.003 de la Ley de Municipios Autónomos dispone que "el servicio público municipal se compondrá del servicio de carrera, servicio de confianza y el servicio irregular". *Íd.*, Sección

11.003. La Ley define a los empleados en el servicio de confianza como aquellos empleados en "puestos cuyos incumbentes intervengan o colaboren sustancialmente en el proceso de formulación de política pública, asesoren directamente, o presten servicios directos al alcalde o al Presidente de la Legislatura". *Íd.*, Sección 11.003(a). El inciso (a) de la Sección 11.003 también dispone que, como regla general, "[t]odos los funcionarios municipales estarán comprendidos en el servicio de confianza". *Íd.* El servicio de carrera, por su parte, está compuesto por los demás empleados municipales, "**excepto los puestos transitorios e irregulares**". *Íd.*, Sección 11.003(b). (Énfasis nuestro). "Los empleados regulares de carrera son aquellos que han ingresado al sistema después de pasar por el procedimiento de reclutamiento establecido en esta ley y haber aprobado el período probatorio. [...] Se considerarán probatorios de carrera aquellos empleados que hayan sido reclutados y nombrados de conformidad con esta ley". *Íd.*, Sección 11.004(b).

Finalmente, la Sección 11.003(a) adopta la norma establecida en la Sección 5.11(7) de la Ley de Personal, *supra*, disponiendo que "[s]e autorizará el cambio de categoría de un puesto de confianza a un puesto de carrera o viceversa sólo cuando ocurra un cambio de funciones o en la estructura organizativa del municipio, que así lo justifique, si el puesto está vacante". Ley de Municipios Autónomos, *supra*, Sección 11.003(a). En consecuencia, los empleados transitorios e irregulares quedan explícitamente exceptuados del servicio de carrera, por lo que la designación como empleado transitorio es incompatible con el servicio de carrera.

Sobre el nombramiento transitorio, la Sección 11.003(c) dispone que:

> Los empleados transitorios serán aquellos que ocupan puestos de duración fija en el servicio de carrera, creados en armonía con las disposiciones de esta ley.

> Se podrán realizar nombramientos transitorios en puestos permanentes del servicio de carrera o de confianza cuando el incumbente se encuentre disfrutando de licencia sin sueldo. **Se podrán efectuar nombramientos transitorios en puestos permanentes de carrera, según se determine mediante reglamento**.
>
> *Íd.*, Sección 11.003(c). (Énfasis nuestro).

El referido inciso dispone que, aunque los empleados transitorios no componen el servicio de carrera, un empleado transitorio podrá ser nombrado a un puesto de carrera cuando: (1) el incumbente se encuentre disfrutando de licencia sin sueldo; o, (2) según determine el reglamento de administración de personal aprobado por el municipio.

No obstante, esto no significa que el empleado transitorio pasa al servicio de carrera, puesto que la Ley dispone una incompatibilidad entre ambos; sino permite que dicho empleado transitorio ocupe y ejerza el puesto en el servicio de carrera de manera transitoria, sin formar parte del mismo. Dicha conclusión queda fortalecida por la Sección 11.004(c), que dispone que "[l]os empleados con nombramientos transitorios no se considerarán empleados de carrera ni se podrán nombrar en puestos de carrera con estatus probatorio o regular, **a menos que pase por los procedimientos de reclutamiento y selección que dispone esta Ley para el servicio de carrera**". *Íd.*, Sección 11.004(c). (Énfasis nuestro). Estos no son empleados "de carrera" y sólo tienen un interés en la retención de su empleo durante el período por el cual se extiende su nombramiento. *Íd.*; *Orta v. Padilla Ayala*, 131 DPR 227 (1992) (empleados municipales transitorios no tienen "expectativa de continuidad en sus puestos luego de expirados los contratos"); *Depto. Recs. Naturales v. Correa*, 118 DPR 689, 697 (1987) (empleado transitorio no tiene "expectativa legítima de retención [...] una vez ha vencido el nombramiento").

Las normas y exigencias de la Ley de Municipios Autónomos fueron incorporadas por el Municipio de San Juan en el Reglamento[41] aprobado conforme lo dispuesto en la Sección 11.001 de la Ley. La Sección 5.2 del Reglamento dispone que "[e]l Servicio de Carrera comprenderá todos los puestos del Municipio [de San Juan], **excepto** los incluidos en el Servicio de Confianza, **los transitorios** y los irregulares". Reglamento, Sección 5.2. (Énfasis nuestro). Añade a dicha definición que "[l]os empleados de carrera serán aquellos que ostenten status **probatorio o regular**. [...] [y] aquellos que han ingresado al sistema después de pasar por el procedimiento de reclutamiento establecido en la ley y en este Reglamento". *Íd.* (Énfasis nuestro).

Así, el Artículo 7 del Reglamento establece el procedimiento de selección y reclutamiento para un puesto en el servicio de carrera del Municipio. Dicho proceso conlleva: (1) un aviso público de las oportunidades de empleo; (2) una evaluación por un Comité de Selección o equivalente; (3) la administración de un examen para medir la capacidad, aptitudes y habilidades; y, (4) finalmente una selección y certificación. *Íd.*, Secciones 7.1-7.7. La Sección 7.8 dispone que se podrán utilizar procedimientos alternos especiales para el reclutamiento y selección de un empleado para un puesto de carrera, pero dichos procedimientos sólo se utilizarán cuando no se disponga del registro de elegibles aprobados para determinada clase de puesto y la urgencia del servicio lo justifique, o para cubrir puestos transitorios, no diestros o semi-diestros. *Íd.*, Sección 7.8. Dicho procedimiento de reclutamiento y selección es imprescindible para que un empleado transitorio sea trasladado a un puesto en el servicio de carrera, por lo que la Sección 7.11 del Reglamento

---

[41] *Íd.*, Anejo VI, págs. 161-185. Tomamos conocimiento judicial del Reglamento de Personal del Servicio de Carrera del Poder Ejecutivo del Municipio de San Juan, presentado como anejo a la *Moción en Solicitud de Sentencia Sumaria* presentada por la Junta de Retiro el 2 de febrero de 2024.

dispone que "[l]os **empleados con nombramientos transitorios no se considerarán empleados de carrera ni se podrán nombrar en puestos de carrera con status probatorio o regular**, **a menos que cumplan con los procedimientos de reclutamiento y selección** dispuestos en este Reglamento". *Íd.*, Sección 7.11. (Énfasis nuestro).

## D.

El Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico, Ley Núm. 447 de 15 de mayo de 1951, 3 LPRA sec. 761 *et seq.* (Ley Núm. 447) crea y le ofrece a sus miembros partícipes un sistema de retiro que opera como fideicomiso. *Íd.*, Artículo 1-101. El Sistema de Retiro creado por la Ley Núm. 447 tiene un alcance específico, por lo que no le aplica a todo empleado del Gobierno de Puerto Rico. En lo relevante, el Artículo 1-105(a) dispone que:

> La matrícula del Sistema estará compuesta por toda persona que ocupe un puesto regular como empleado de carrera, de confianza, transitorio o con status probatorio en cualquier departamento ejecutivo, agencia, administración, junta, comisión, oficina o instrumentalidad de la Rama Ejecutiva; por los Jueces de Paz y los empleados y funcionarios regulares de la Rama Judicial, y por todos los funcionarios y empleados regulares de los municipios, incluyendo a los alcaldes. **Los empleados municipales transitorios no serán participantes del Sistema de Retiro**.

*Íd.*, Artículo 1-105(a). (Énfasis nuestro).

Por lo tanto, la Ley Núm. 447 exceptúa, de manera explícita, a los empleados municipales transitorios del Sistema de Retiro creado.

El Artículo 3-101 de la Ley Núm. 447 crea un Programa de Cuentas de Ahorro para el Retiro. La Sección 3-101(b)(1) dispone que participarán en el referido programa "[t]odo nuevo empleado **que ingrese al Sistema por primera vez en o después del primero de enero del 2000**". *Íd.*, Artículo 3-101(b)(1). (Énfasis nuestro).

## E.

La Ley Núm. 93, *supra,* le permite a los participantes del Sistema de Retiro establecido en la Ley Núm. 447 "la oportunidad de optar por continuar acogidos al plan de coordinación existentes entre el Sistema de Retiro y el Sistema de Seguro Social Federal, o cambiar a un plan de completa suplementación entre ambos sistemas". *Íd.*, Exposición de Motivos. Aunque la Ley Núm. 93 dispone que los participantes del Sistema de Retiro debían someter una declaración en la que harán constar su preferencia por continuar en el plan de coordinación existente o cambiar de completa suplementación en o antes del 1 de julio de 1968, *Íd.*, Artículo 2, el Artículo 4 de la Ley extiende la posibilidad de acogerse al Plan de Completa Suplementación a aquellos empleados que hayan ingresado al servicio público en una fecha posterior. Dicho Artículo dispone que:

A. — **Toda persona que sea actualmente miembro del Sistema de Retiro** y que haya sido participante del Sistema desde el 1ro. de julio de 1968, deberá haber expresado su preferencia por uno u otro plan mediante la correspondiente declaración al momento de ingresar al Sistema. Se entenderá que los participantes que no hayan sometido la declaración de preferencia entre el plan
coordinado y el plan de completa suplementación, han quedado acogidos al plan de coordinación existente.

B. — **Todo nuevo participante que ingrese al Sistema después del 1ro. de abril de 1990**, se acogerá al plan de completa suplementación.

C. — **Los actuales participantes** que hayan optado por el plan de completa suplementación, harán las aportaciones de base del 8.275% de su retribución mensual a partir del 1ro. de abril de 1990.

D. — **Los actuales participantes** acogidos al plan de coordinación existente, aportarán al Sistema a partir del 1ro. de abril de 1990, el 5.775% de su retribución mensual hasta quinientos cincuenta dólares ($550.00) y el 8.275% de la retribución mensual en exceso de dicha cantidad.

E. — Los actuales miembros del Cuerpo de la Policía y del Cuerpo de Bomberos, que **hayan ingresado al Sistema con posterioridad a la fecha del referéndum mencionado en el Artículo 2** de esta Ley Núm. 93 del 19 de junio 1968, aportarán una suma equivalente al 8.275% de su retribución mensual.

F. — A partir del 1ro. de abril de 1990, **los participantes del sistema de Retiro** que estén acogidos al plan de coordinación existente, podrán acogerse al plan de completa suplementación siempre y cuando paguen al Sistema de Retiro las sumas necesarias más intereses al tipo corriente para completar las aportaciones a base del 8.275% de su retribución mensual por el período de retroactividad.

*Íd.*, Artículo 4. (Énfasis nuestro).

Por lo tanto, a pesar de que la Ley permite que nuevos empleados opten por participar del Plan establecido, este Artículo establece unos requisitos para hacerlo. En primer lugar, el empleado debe ya pertenecer al Sistema de Retiro del Gobierno de Puerto Rico, entiéndase el sistema de la Ley Núm. 447.

### III.

Evaluado el Derecho aplicable a la controversia ante nuestra consideración, nos encontramos en posición para resolver. Tras un análisis de las comparecencias de las partes, consideramos forzoso concluir que no erró el TPI al determinar, mediante la vía sumaria, que a la Sra. Santiago Olivieri le son de aplicación los beneficios dispuestos en el Capítulo 3 de la Ley Núm. 447, también conocida como la Reforma 2000.

En primer lugar, resaltamos que nos encontramos ante la revisión de un caso resuelto mediante el mecanismo de sentencia sumaria. Al tratarse de la apreciación de prueba documental, el Tribunal de Apelaciones se encuentra en la misma posición que el Tribunal de Primera Instancia, en consecuencia, nuestra revisión del caso de autos se hace *de novo*.

No existe duda sobre el hecho de que la Sra. Santiago Olivieri ingresó al servicio público en el 1997 como empleada transitoria del Municipio de San Juan, por lo que no llegó a formar parte del servicio de carrera, según este se define en la Ley de Personal, *supra,* la Ley de Municipios Autónomos, *supra,* o el Reglamento de Personal de San Juan, *supra.* Por otro lado, la Sra. Santiago Olivieri presentó

una *Declaración Individual* en la que hizo constar que optaba por participar en el Sistema de Retiro del Plan de Completa Suplementación. No obstante, la Ley Núm. 93, *supra*, prohíbe que ella haya optado por dicho Plan en aquel momento, puesto que el Artículo 1-105(a) de la Ley Núm. 447, *supra*, dispone que como empleada transitoria municipal, no podía participar del Sistema de Retiro del Gobierno de Puerto Rico. Por lo tanto, la *Declaración Individual* no podía producir efecto jurídico alguno.

Ahora bien, existe controversia sobre el momento en el que la Sra. Santiago Olivieri pasó de ser empleada transitoria municipal a formar parte del servicio de carrera del Municipio de San Juan. Según alega la Apelante, esto ocurrió el 1 de julio de 1999, cuando llegó a ocupar el puesto de Administradora de Sistemas de Oficina I que, según el *Informe de Cambio Especial 99-02875*,[42] era un puesto de carrera. Los Apelados, por otro lado, alegan que esto ocurrió en el 1 de enero de 2000, cuando el *Informe de Cambio* emitido el 28 de diciembre de 1999[43] reflejó que a partir del 1 de enero de 2000, su nombramiento cambiaría de uno transitorio a uno probatorio. Por las razones discutidas a continuación, nos convence el argumento de los Apelados.

Primeramente, según ha argüido la Sra. Santiago Olivieri, lo que dispone el *Informe de Cambio Especial 99-02875* constituye un cambio de clasificación a un puesto de carrera. Según ella, esto está apoyado por una *Hoja de Servicio* emitida por el Municipio de San Juan, que reconoce su estatus como empleada de carrera a partir de 1 de julio de 1999.[44] En cuanto a este punto, los Apelados señalaron que las *Hojas de Servicio* que emite la Administración de los Sistemas de Retiro no constituyen documentos oficiales con

---

[42] *Íd.*, Anejo IV, pág. 61.
[43] *Íd.*, pág. 66.
[44] *Íd.*, pág. 63.

efectos sustantivos sobre los derechos de los empleados. Los únicos documentos que utiliza la Junta de Retiro para estos propósitos son los Informes de Cambio. Por lo tanto, la *Hoja de Servicio* presentada no apoya el argumento de la Sra. Santiago Olivieri.

En segundo lugar, la Apelante arguyó que en el *Informe de Cambio Especial 99-02875*, el Municipio de San Juan hizo constar que la categoría del puesto que ésta iba a ocupar era de carrera. Sin embargo, dicho *Informe de Cambio Especial* señala que este sólo notifica un cambio en "la clasificación y sueldo" de la Sra. Santiago Olivieri, no en la categoría de puesto. Por otro lado, no existe impedimento en el que una empleada transitoria ocupe un puesto en el servicio de carrera sin haberse efectuado un cambio en su categoría. La Sección 11.003(c) de la Ley de Municipios Autónomos, *supra*, dispone que "[s]e podrán efectuar nombramientos transitorios en puestos permanentes de carrera, según se determine mediante reglamento". En consecuencia, aun si el *Informe de Cambio Especial 99-02875* hubiese efectuado un cambio en la categoría de la Sra. Santiago Olivieri, que no lo hizo, el mismo no hubiese cambiado su categoría como empleada transitoria.

Lo concluido está conforme a la Sección 11.004(c) de la Ley de Municipios Autónomos, que dispone que "[l]os empleados con nombramientos transitorios no se considerarán empleados de carrera ni se podrán nombrar en puestos de carrera con estatus probatorio o regular, a menos que pase por los procedimientos de reclutamiento y selección que dispone esta Ley para el servicio de carrera". Lo mismo se establece en el Reglamento de Personal del Municipio de San Juan, que también dispone que sólo ocurrirá un cambio en la categoría de un empleado transitorio luego de que este pase por un proceso de reclutamiento y selección. En efecto, esto fue lo que hizo la Sra. Santiago Olivieri, luego de solicitar en la convocatoria publicada por el Municipio de San Juan, para el puesto

de Administradora de Sistemas de Oficina I. En septiembre de 1999, la Apelante presentó su solicitud con la información requerida. Aprobó el examen de reclutamiento y eventualmente fue seleccionada para ocupar el puesto. Así, el 28 de diciembre de 1999, el *Informe de Cambio* emitido dispuso que **a partir del 1 de enero de 2000** la categoría de la Sra. Santiago Olivieri pasaría de ser transitoria a ser probatoria, y no a partir del 1 de julio de 1999, como alega la Apelante. Es en la antedicha fecha, que la Apelante, es nombrada a ocupar el puesto de Administradora de Sistemas de Oficina con estatus probatorio hasta el 30 de septiembre de 2000. Por lo tanto, previo al 1 de enero de 2000 la Apelante no había ocupado un puesto regular o probatorio de carrera en el Municipio de San Juan.

Así las cosas, puesto que el Artículo 3-101 de la Ley Núm. 447, *supra*, dispone que "[t]odo nuevo empleado que ingrese al Sistema por primera vez en o después del primero de enero de 2000" recibirá los beneficios del Plan de Retiro dispuesto por la Reforma 2000, es forzoso concluir que este es el que le aplica a la Sra. Santiago Olivieri.

Finalmente, la Sra. Santiago Olivieri señaló como error que el TPI no aplicó la presunción de corrección de las actuaciones administrativas. Sobre la facultad revisora de los tribunales, el Tribunal Supremo ha expresado que:

> **[L]as determinaciones de hecho se deben sostener si se fundamentan en evidencia sustancial que surja de la totalidad del expediente administrativo**. Mientras, la deferencia antes mencionada **no se extiende de manera automática a las conclusiones de derecho** emitidas por la agencia, ya que estas serán revisables en todos sus aspectos por el tribunal. **Esto es, que el tribunal las puede revisar sin sujeción a norma o criterio alguno**.
>
> *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99, 115 (2023). (citas omitidas) (Énfasis nuestro).

"[L]os foros apelativos debemos diferenciar entre asuntos de interpretación estatutaria, en la que los tribunales son especialistas, y los asuntos propios de la discreción o la pericia administrativa". *Íd.*, pág. 116. Entre las determinaciones de hechos y las conclusiones de derechos, los tribunales les deben menor deferencia a las conclusiones de derecho de las agencias. *Íd.*, pág. 115. Aun así, la interpretación judicial del derecho no constituye una sustitución automática de las conclusiones de derechos de una agencia. *Íd.* En otras palabras, la deferencia disminuida no trata de una revisión *de novo*. El criterio administrativo solo debe ser descartado cuando "no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo". *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018). No vemos razón para hacerlo.

Del análisis en Derecho realizado, no vemos error en la aplicación del derecho aplicable a los hechos no controvertidos. Además, sostenemos que no existen controversias sobre hechos materiales para impedir la resolución del presente caso mediante la vía sumaria. En consecuencia, concluimos que no se cometió el error señalado.

**IV.**

Por las razones discutidas, confirmamos la *Sentencia Nunc Pro Tunc* emitida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones